# EXHIBIT 2

## **SETTLEMENT AGREEMENT AND RELEASE**

This Settlement Agreement and Release is made and entered into by and between Latasha Allen, Atico International USA, Inc., Walgreen Co. and East West Distributing Co.

### DEFINITIONS

The Definitions Section of the Settlement Agreement and Release sets forth the meaning of some of the material terms repeated throughout the Settlement Agreement and Release. Whenever the defined terms appear in capital letters, those terms have the meaning given in the Definitions Section. These terms have been defined to avoid any ambiguity and confusion over the meaning of these material terms and to create a Settlement Agreement and Release that is understandable to all interested parties. The Definitions Section does not include all of the material terms set forth in the Settlement Agreement. Instead, the Definitions Section includes those terms that involve words that incorporate related phrases and terminology. The Definitions Section is designed to incorporate all related phrases and words to limit the body of the Settlement Agreement and Release to easily understandable language.

A. "RELEASOR" and "RELEASORS": Includes Latasha Allen, her successors and assigns, her heirs, her dependents, her executors, her administrators, her subrogees, her insurers, her assignees, her estates, her successors in interest, and the beneficiaries of any and all rights, interests and properties of Latasha Allen.

B. "RELEASEE" and "RELEASEES": Includes Atico International USA, Inc. ("Atico"), Walgreen Co. and East West Distributing Co. (collectively "Walgreens"), and any and all of their past, present and future parent corporations/companies, subsidiary corporations/companies, affiliate corporations/companies, division corporations/companies, shareholders, stockholders, officers, directors, employees, agents, licensors, licensees, servants, attorneys, insurers, experts, consultants, investigators, representatives, distributors, assemblers, partners, suppliers, any entity involved in the chain of design, manufacture, distribution, sourcing and sale of the FRYING PAN, and any entity associated with and/or having any contractual relationship with Atico, Walgreens or any entity involved in any way with the FRYING PAN, or any of its components.

Also, to the extent not already included in the immediately preceding paragraph, RELEASEES includes any and all individuals and entities involved in the design, development, testing, manufacture, assembly, distribution, sourcing, marketing, advertising, sale, financing,

::ODMA\PCDOCS\SJO\148538\1

warranty, repair and maintenance of the FRYING PAN and any components of the FRYING PAN, regardless of whether such individuals and entities are specifically identified in this SETTLEMENT AGREEMENT.

    C. The definition of "RELEASEES" is intentionally defined to encompass all individuals and entities associated, in any way, with Atico or Walgreens in the design, development, testing, manufacture, assembly, distribution, sourcing, sale, advertising, marketing, financing, warranty, repair and maintenance of the FRYING PAN or any of its component parts to cover the largest and broadest group of individuals and entities to bring all disputes and litigation to an end. All parties understand and agree that the word RELEASEES includes entities and persons described in this definition of RELEASEES even though some of those persons and entities are not parties to this litigation or are not specifically identified in this RELEASE. The word "RELEASEES" shall not be limited in any way and will include any person and/or entity that may be the subject of any future complaint and lawsuit related to the FRYING PAN or any of its components, or damages sustained by Latasha Allen.

    D. "CLAIMS" and "ACTIONS": Include the demands, obligations, legal actions, complaints, enforcement of rights, petitions, collection of liens and all causes of action that are the subject matter of this claim that (a) have ever existed, (b) now exist and/or, (c) may exist in the future. "CLAIMS" and "ACTIONS" include any claims in law and/or equity, including but not limited to, (i) negligence, (ii) product liability, (iii) strict liability, (iv) breach of implied warranty of merchantability, (v) breach of implied warranty of fitness, (vi) breach of express warranty, and (vii) any statutory claims or causes of action that actually existed, may have existed in the past and that may exist in the future but have not materialized in connection with the FRYING PAN, or damages to RELEASORS or to the design, development, testing, manufacture, assembly, sale, distribution, sourcing, marketing, advertising, financing, warranty, maintenance, repair and use of the subject FRYING PAN or any of its components, or any subject matter arising out of or related in any way to any of the foregoing. Also, "CLAIMS" and "ACTIONS" include any legal proceeding brought to obtain any form of relief, including but not limited to relief involving DAMAGES.

    E. "DAMAGES": Includes any relief sought by any of the CLAIMS and/or ACTIONS that existed, now exist and/or that may exist in the future including, but not limited to, (a) personal or real property damages, (b) personal injury, (c) death, (d) economic loss of any kind, (e) punitive damages, (f) special damages, (g) injunctive relief, (h) declaratory relief, (i) attorney's fees, and (j) litigation cost/expenses.

F.  "INCIDENT":  Includes the facts and circumstances arising out of, or relating in any way to, the events that occurred on or about April 6, 2009, involving the FRYING PAN and resulting in personal injuries to Latasha Allen.

G.  "FRYING PAN":  Is identified as the 9.5" FRYING PAN Latasha Allen was attempting to use when she was injured in Atlanta, Georgia.

H.  "COMPLAINT":  Involves the legal proceedings that were filed in the District Court for the Northern District of Georgia, Atlanta Division, with the following caption: *Latahsa A. Allen v. Walgreen Co. d/b/a Walgreens, Atico International USA, Inc. and East West Distributing Co.,* Case No. 1:11-cv-01577-WSD.

I.  "RELEASE" and "SETTLEMENT AGREEMENT":  Refer to this Settlement Agreement and Release made and entered into by and between RELEASORS and RELEASEES, which, among other things, incorporates and refers to the terms set forth in the Definitions Section, Recitals and Settlement Terms sections of this document.

## RECITALS

A.  RELEASORS allege Latasha Allen was attempting to use the FRYING PAN in Atlanta, Georgia when the handle of the FRYING PAN broke while she was using the frying pan causing hot oil to spill on her body.  RELEASORS allege they are entitled to an award of damages against Atico and Walgreens.

B.  RELEASEES deny all allegations of liability made by RELEASORS.

C.  RELEASORS and RELEASEES, without the admission of liability or fault in any way by any party, desire to compromise and settle all of the CLAIMS and/or ACTIONS for all DAMAGES against RELEASEES that arise out of, or relate in any way to the INCIDENT, the FRYING PAN, or DAMAGES to RELEASORS.

D.  The implementation of this SETTLEMENT AGREEMENT will fully and finally resolve all CLAIMS and/or ACTIONS for DAMAGES between RELEASORS and RELEASEES, or any other entity, whether named or unnamed in the SETTLEMENT AGREEMENT, that arise out of or relate in any way to, the INCIDENT, the FRYING PAN, or the injuries to Latasha Allen.

## SETTLEMENT TERMS

1.0. <u>Dismissal and Release</u>

    1.1. Plaintiffs shall provide a Stipulation for Dismissal with prejudice of the COMPLAINT in its entirety, with Plaintiffs and Defendants each to bear their respective costs and attorneys' fees. In addition, RELEASORS shall dismiss in their entirety all other ACTIONS and CLAIMS they may have filed against RELEASEES that are on account of, arise out of or relate in any way to the INCIDENT, the FRYING PAN and its component parts, and/or any and all damages to Plaintiffs. RELEASORS authorize and instruct their attorneys to sign and provide all documentation and to take all other action necessary to have such ACTIONS and CLAIMS described in this Settlement Agreement dismissed in their entirety, with prejudice. The Court shall retain jurisdiction for enforcing the terms of the settlement and making any equitable distribution.

    1.2. In consideration of the payment described in Section 2.0, RELEASORS do thereby completely release and forever discharge RELEASEES and all other persons, entities and corporations from (a) any and all past, present or future CLAIMS AND/OR ACTIONS and (b) DAMAGES that RELEASORS (i) had at any time in the past, (ii) now have, or (iii) that may later accrue or otherwise be acquired, whether known or unknown, on account of, or in any way arising out of or relating to, the INCIDENT, the FRYING PAN, and/or damages to RELEASORS.

    1.3. This RELEASE is specifically intended by RELEASORS and RELEASEES to include, benefit and apply to all persons, individuals and entities involved in the definition of "RELEASEES," regardless of whether they are specifically identified in this SETTLEMENT AGREEMENT. The parties to this SETTLEMENT AGREEMENT understand and agree that the RELEASEES are the intended beneficiaries of this settlement agreement.

    1.4. This RELEASE, on the part of the RELEASORS, shall be a fully binding and complete settlement between RELEASORS and RELEASEES.

2.0 <u>Payments</u>

    2.1 In consideration of the releases set forth above, Atico agrees to pay to RELEASORS ███████████████████████████████ ($██████) in a check made

payable to "Latasha Allen and her attorneys, Edmond & Lindsay LLP". Payment shall be made within ~~fifteen~~ ten (~~15~~10) business days after counsel for RELEASORS receives a copy of the fully executed and notarized Settlement Agreement and Release and W-9 form.

2.2. RELEASEES shall have no duty or liability of any kind with respect to the distribution of the amount paid pursuant to this RELEASE to RELEASORS, insurers, lien holders, or any of them. In addition, paragraph 1.0 and its subsections, as well as the other terms of this RELEASE shall become effective immediately upon delivery of the check as described in paragraph 2.1 and shall not be impacted in any way by any dispute that exists or that later arises between RELEASORS, their insurers, lienholders, or any of them, concerning their share of the settlement proceeds or concerning their right, title or interest in any portion of the settlement proceeds.

2.3. Despite any other provision of this RELEASE, RELEASORS and RELEASEES are authorized to report all payments made pursuant to this RELEASE to the Internal Revenue Service and other local, state and federal taxing authorities.

3.0. <u>Construction of Settlement</u>

RELEASORS agree that nothing in this SETTLEMENT AGREEMENT shall be construed as an admission of any strict liability, negligence, willful misconduct, breach of contract, breach of warranty, liability, intentional misconduct, gross negligence or fault of any kind whatsoever by RELEASEES, and this SETTLEMENT AGREEMENT is and shall be construed strictly as a compromise and settlement of all disputes between the parties to this SETTLEMENT AGREEMENT for the purpose of avoiding further controversy, litigation and expense.

4.0. <u>General Release</u>

RELEASORS acknowledge and agree that the conditions set forth in paragraph 1.0 and its subsections of the SETTLEMENT AGREEMENT are general releases, and further expressly waive and assume the risk of any and all CLAIMS for DAMAGES that exist as of this date but that RELEASORS do not know or suspect to exist, whether through ignorance, oversight, error, negligence or otherwise, and which, if known, would materially affect their decision to enter into the SETTLEMENT AGREEMENT.

5.0. <u>Representation of Comprehension of Document</u>

In entering into this SETTLEMENT AGREEMENT, RELEASORS represent that the SETTLEMENT AGREEMENT has been read completely and that the terms of this SETTLEMENT AGREEMENT are fully understood and voluntarily accepted by RELEASORS.

6.0. <u>Warranty of Capacity to Execute Agreement and of the Absence of Other Claims</u>

RELEASORS represent and warrant that no other person or entity has, or has had, any interest in the COMPLAINT or the CLAIMS and/or ACTIONS referred to in this SETTLEMENT AGREEMENT, except as otherwise set forth therein; that RELEASORS by signing this SETTLEMENT AGREEMENT acknowledge that they are releasing any potential CLAIMS and ACTIONS in favor of the RELEASEES as part of this settlement; that RELEASORS have the sole right and exclusive authority to execute this SETTLEMENT AGREEMENT and receive the sums specified in it; and that RELEASORS have not sold, assigned, transferred, conveyed or otherwise disposed of any of the CLAIMS, ACTIONS, demands, liens, obligations or causes of action referred to in this SETTLEMENT AGREEMENT and the COMPLAINT.

7.0. <u>Covenant Not to Sue</u>

RELEASORS represent and warrant that RELEASORS have not brought, will not, and do not intend to bring any further CLAIMS or ACTIONS arising out of or relating in any way to the INCIDENT involving the FRYING PAN or any of its components.

8.0. <u>Indemnity</u>

RELEASORS, in return for the consideration provided in this SETTLEMENT AGREEMENT, agree to indemnify and forever to hold harmless and to defend RELEASEES (with counsel selected by RELEASEES and with RELEASEES retaining the sole right to direct and control the litigation) and to assume the cost of defense, including attorneys' fees, of RELEASEES, and the persons and entities described in paragraph 1.0 and its subsections, against any and all CLAIMS, ACTIONS, cross-claims, cross-actions, liability, liens, damages, costs or expenses arising from or relating in any way to the INCIDENT involving the FRYING PAN, including indemnification against any third party claims, workers compensation, hospital, attorney, medical, medicare, or medicaid liens, or other subrogation claims, or any claims for loss of consortium.

9.0. <u>Governing Law</u>

This SETTLEMENT AGREEMENT shall be construed and interpreted in accordance with the laws of the State of Georgia.

10.0. <u>Confidentiality</u>

RELEASORS agree that the amounts in this SETTLEMENT AGREEMENT and the negotiations and discussions that led to the settlement of the CLAIM and release of all CLAIMS and ACTIONS, and the SETTLEMENT AGREEMENT itself shall remain, to the maximum extent possible, completely confidential, and shall not be disclosed by the

RELEASORS or to any person, corporation, firm, partnership, association or entity of any type, except as provided in this SETTLEMENT AGREEMENT. The RELEASORS may make only the following statement concerning resolution of this lawsuit: "The parties have settled their disputes on terms that are satisfactory to all parties." The terms and conditions of the SETTLEMENT AGREEMENT must be kept confidential. RELEASORS may disclose the amount of this settlement only as necessary to obtain financial planning and/or tax advice and/or as necessary in connection with their bookkeeping, accounting and/or banking; however, if RELEASORS disclose such information to any person, RELEASORS shall inform each such person of the terms of the confidentiality agreement in this paragraph, ~~and RELEASORS agree that any breach of the confidentiality provisions in this paragraph by any such person will constitute a breach by RELEASORS of this paragraph~~.

Should RELEASORS receive notice of a legal proceeding in which the court is requested by a person or entity to order the RELEASORS to disclose any matter covered by this confidentiality provision, RELEASORS agree to give immediate notice to RELEASEES, and to duly advise such court, person or entity of the terms of this confidentiality provision. If disclosure of the amount of this settlement is required to be made to a court of law, RELEASORS agree not to oppose any motion for a protective order seeking to protect the confidentiality of this SETTLEMENT AGREEMENT. The parties agree and acknowledge that this paragraph is a material clause of this SETTLEMENT AGREEMENT, in the absence of which RELEASEES would not agree to execute the SETTLEMENT AGREEMENT.

11.0.  <u>Entire Agreement and Successors in Interest</u>

This SETTLEMENT AGREEMENT contains the entire agreement between RELEASORS and RELEASEES with regard to the matters set forth in it and shall be binding upon and inure to the benefit of the executors, administrators, personal representatives, heirs, successors and assigns of each. The SETTLEMENT AGREEMENT includes those sentences and clauses contained in the Definitions Section, Recital Section and Settlement Terms Section.

12.0.  <u>Agreement Supersedes Other Agreements</u>

This SETTLEMENT AGREEMENT supersedes all prior agreements or understandings, whether written or oral, of the parties thereto relating to the subject matter thereof and incorporates the entire understanding of the parties with respect thereto. In the event of uncertainty in the terms of this SETTLEMENT AGREEMENT, such uncertainty shall be

resolved fairly and in accordance with the intent of the parties as set forth therein, and without regard as to which party caused the uncertainty to exist.

13.0. Invalid Provisions

If, after the date thereof, any provision of this SETTLEMENT AGREEMENT is held to be illegal, invalid or unenforceable under present or future laws effective during the term of this SETTLEMENT AGREEMENT, such provision shall be fully severable. In lieu thereof, there shall be added a provision as similar in terms to such illegal, invalid or unenforceable provision as may be possible and be legal, valid and enforceable.

14.0. Interpretation and Intent

The parties agree that this SETTLEMENT AGREEMENT is a product of draftsmanship by all sides, and the rule of interpreting an agreement against a drafting party does not apply. The intent of the SETTLEMENT AGREEMENT is to maximize the protection and benefit of the released persons and entities including, but not limited to, those referenced in clause 1.0 and its subsections and all persons and entities included in the definition of RELEASEES, and the SETTLEMENT AGREEMENT should be interpreted consistent with the policy of finality of settlements and ending any and all litigation, including all litigation arising out of or relating in any way to the INCIDENT, the FRYING PAN and its components, or the DAMAGES sustained as a result of this INCIDENT.

15.0 Each party will bear their own costs and attorneys fees


By signing below, the RELEASOR hereby certifies that she has read this SETTLEMENT AGREEMENT, and fully understands its meaning and importance. The RELEASOR also certifies that she has discussed this settlement with her attorneys and she has full authority to execute it.

RELEASOR


_____
Latasha Allen

DATED: _____, 2011

STATE OF _____  )
                          )    ss.
COUNTY OF _____     )

On _____, 2011, before me, the undersigned, a Notary Public in and for said State, personally appeared _____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same.

WITNESS my hand and official seal.

_____

My Commission expires:

_____

Approved as to form:

_____
KEITH LINDSAY, Counsel for Plaintiff